UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FERNANDO MATEO,                                                    REPORT AND
                            Plaintiff,                          RECOMMENDATION
              - against -
UNIVERSAL LANGUAGE                                              13-CV-2495 (NGG) (JO)
CORPORATION,
                            Defendant.
--------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiff Fernando Mateo, acting on behalf of himself and others similarly situated, accuses defendant Universal Language Corporation ("Universal") of failing to pay its employees the overtime wages to which they were entitled under federal and state law. *See* Docket Entry ("DE") 1 ("Complaint"); Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"); New York Labor Law §§ 196-d, 650, *et seq.* (the "NYLL").[1] Although Universal belatedly answered the Complaint, it thereafter stopped participating in the litigation and the court therefore struck its Answer and permitted the plaintiffs to seek the entry of Universal's default. *See* DE 47. The plaintiffs did not do so, but nevertheless now seek a default judgment. DE 51. Upon a referral from the Honorable Nicholas G. Garaufis, United States District Judge, I now make this report and, for the reasons set forth below (including, primarily, my conclusion that the record establishes that the named plaintiff was not Universal's employee within the meaning of applicable law), respectfully recommend that the court deny the motion on both procedural and substantive grounds, decertify the collective action under the FLSA, and dismiss the Complaint *sua sponte* with prejudice as to plaintiff Mateo and without prejudice as to the opt-in plaintiffs.

---

[1] Twelve opt-in plaintiffs have joined the action: Gilda Briceno, Ingrid Ruiz, Stephen Wu, Elizabeth Mejia, Monica West, Bris Gallego, Nelson Chavez, Zaida G. Pimentel, Manuel Valerio, Keisha Noel, Ajay Shah, Luz Hoffman, and Laura Avila. *See* DE 22 through DE 28; DE 30 through DE 33; DE 36; DE 37. As a convenient shorthand, I will refer to each by his or her surname.

I. <u>Background</u>

    A. <u>Facts</u>

        1. <u>The Complaint</u>

The Complaint accused Universal of failing to pay its translators the overtime wages required under the FLSA and NYLL. A summary of the Complaint's factual allegations follows; I note at the outset, however, that several of those allegations – particularly those characterizing the nature of the employment relationship between Universal and the plaintiffs – are in tension with facts to which two of the plaintiffs testified at the damages inquest.

Universal, a Delaware corporation with its principal place of business in Rego Park, New York, provides translation services to state and federal agencies throughout the Northeast. Complaint ¶¶ 7, 23, 27. Mateo and his colleagues provided translation services for Universal and its clients, and each sometimes worked over 40 hours per week. Universal, however, never paid them premium overtime wages because it characterized them as independent contractors. *Id.* ¶¶ 24, 28, 59-61, 68.

With respect to the nature of the employment relationship, the Complaint alleges as follows: Universal – which on its web site characterized the translators it made available to clients as "employees" – required Mateo and other translators to attend a training session before working on a project. Mateo and his colleagues then performed translations at the offices of the government agencies that had contracted with Universal, and they worked under the supervision of an on-site Universal supervisor. Universal imposed a dress code on its translators and required them to keep and submit time records. Universal provided the translators with any necessary equipment (which included goods that originated outside of the State of New York) and then provided the finished product to the client; it also supervised the translators' work product, found replacement translators for the clients when necessary, and handled client complaints. The translators did not bid on

assignments, did not negotiate the rates for their services, had no set work schedules and typically would not know how long an assignment would last. Universal paid the translators for their work regardless of whether the work was later deemed unsatisfactory, and paid them for time spent making corrections; it also reimbursed the plaintiffs for such business-related expenses as travel and lodging. The translators had no managerial responsibilities, did not exercise independent judgment in carrying out their assignments, and did not have business cards or stationery with letterheads identifying them as independent of Universal. *Id.* ¶¶ 26, 29-51, 55-57.

### 2. Inquest Testimony

Two of the plaintiffs, Mateo and Chavez, testified at the inquest. *See* DE 73 (minute entry); DE 74 (transcript) ("Tr."). I found the testimony of each to be wholly credible. As summarized below, each asserted facts at odds with the proposition that the translators who provided services to Universal's clients were the company's employees rather than independent contractors.

Consistent with the Complaint, Mateo testified that a Universal supervisor would set his schedule, make corrections to his work, and give him open-ended assignments. However, Mateo also contradicted the Complaint in important respects. In addition to acknowledging that Universal considered him an independent contractor, Mateo stated that the company did not provide any equipment for him; to the contrary, he used his own personal computer and headphones, as well as software provided by the clients for whom he provided translation services. Moreover, Mateo reported that he never had any business expenses, and that he determined when he would make himself available for the projects that Universal offered. *See* Tr. at 4-12.

Like Mateo, Chavez also reported that a Universal supervisor would review his work for "quality control." *Id.* at 20. Also consistent with the Complaint was Chavez's testimony that he was paid for corrections and that his wage changes over time were not negotiated. *Id.* at 21, 26. But Chavez was even more explicit in characterizing himself as a "contractor" rather than Universal's

3

employee. *Id.* at 15. That characterization was consistent with much of Chavez's description of his work for Universal's clients: he sometimes worked for other companies during the periods that he did work for Universal; he – and not Universal – supplied the equipment he used to perform translations; he would generally work from his own home or at the client agency's office, only going to Universal's location once to do work (indeed, Universal never assigned Chavez a computer or any office space); he was free to choose the assignments and work schedules that he would accept; and Universal did not reimburse him for any business-related expenses. *See id.* at 15-27.

B.     Proceedings

Mateo – at that point the only plaintiff in the action – filed the Complaint on April 24, 2013. DE 1. Universal did not timely respond, and the Clerk therefore entered its default at Mateo's request on July 16, 2013. *See* DE 8. Several weeks later, however, Universal filed an answer and a motion on consent to vacate its default. *See* DE 10; DE 11; DE 12. The parties then set about litigating their dispute: they exchanged discovery for several months, they stipulated to the conditional certification of a collective action under the FLSA, and they circulated a notice to similarly situated translators of their opportunity to join the litigation as plaintiffs. *See* DE 18; DE 20; Order dated November 7, 2013. Between February 3 and April 15, 2014, each opt-in plaintiff filed a consent to become a party in this action and to be represented by Mateo's counsel. *See* DE 22 through DE 28; DE 30 through DE 33; DE 36; DE 37.

At the deposition of Universal's corporate designee on July 8, 2014, Universal revealed that it was winding down its operations. *See* DE 40 at 1. Universal then stopped communicating with its counsel and participating in the lawsuit. *See* DE 42 through DE 45. Accordingly, on September 15, 2014, I recommended that the court strike the defendant's Answer and permit the plaintiffs to seek a default judgment. DE 46. No party objected, and on October 6, 2014, the court adopted the recommendation and ordered as follows: "[T]he court … STRIKES Defendant's Answer. Plaintiffs

are therefore free to seek a certificate of default and default judgment…. Plaintiffs' counsel are DIRECTED to submit a letter informing the court of Plaintiffs' intention by October 20, 2014." DE 47 at 3.

On October 17, 2014, the plaintiffs' counsel reported that his clients intended to seek a default judgment and proposed doing so by November 21, 2014. DE 48. I approved the proposed schedule by order dated October 20, 2014. On November 18, 2014, the plaintiffs sought an additional 30 days to file their motion "to allow for additional time to obtain sworn statements from each Plaintiff[.]" DE 49. By order dated November 19, 2014, I denied the request, noting that the plaintiffs had not explained why they needed more time to accomplish a task that was entirely within their own control. On November 20, 2014, the plaintiffs again sought to adjourn the deadline for filing a motion, this time to December 2, 2014, explaining that not all of them had yet sent executed statements to their counsel and also that counsel was moving offices and would have limited availability during the move. DE 50. I granted the request in an order dated November 20, 2014.

On December 2, 2014, Plaintiffs filed the instant motion for default judgment along with affidavits and supporting documents. DE 52 (memorandum of law); DE 53 (attorney affidavit); DE 54 through DE 66 (declarations of each plaintiff). However, at no time after the court's order explicitly permitting them "to seek a certificate of default" did they take the required preliminary step of asking the Clerk to enter Universal's default. *See* Fed. R. Civ. P. 55(a); Loc. Civ. R. 55.2(b)(1) (requiring party filing motion for default judgment to append to the application the Clerk's certificate of default). The court referred the motion to me. *See* DE 67. I scheduled a damages inquest, which, after two adjournments, was held on March 4, 2015. DE 73. The plaintiffs then filed a supplemental memorandum in support of the motion on April 29, 2015. DE 77.

5

II.  Discussion

   A.  The Motion Is Premature

A plaintiff seeking a default judgment in a federal lawsuit must go through "a two-step process[.]" *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The first step is to secure from the court's Clerk the notation of the defendant's default. Only then may the plaintiff move for a default judgment. *See id.* at 504-05; Fed R. Civ. P. 55(b); Loc. Civ. R. 55.2(b)(1). The failure to secure the Clerk's entry of default is a sufficient basis to deny the premature motion for default judgment. *See Transatlantic Auto Grp., Inc. v. Unitrans-Pra Co.*, 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011); *Monahan v. Pena*, 2009 WL 2579085, at *6 n.8 (E.D.N.Y. Aug. 18, 2009). Because the plaintiffs have not satisfied the procedural requirement of this two-step process – despite the court's explicit invitation to do just that, *see* DE 47 at 3 – the court can and should deny the motion as premature.

Such a ruling would of course not preclude a later motion for default judgment, and if this procedural lapse were the only defect, I would recommend a practical solution: setting a deadline for the plaintiffs to secure the Clerk's entry of default, then deeming the motion for default judgment reinstated, and then granting appropriate relief. However, as discussed below, the plaintiffs' motion suffers from a more substantive defect that I conclude warrants denial of the motion.

   B.  Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered, however, does not suffice to establish liability on its claims. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 & n.17 (2d Cir. 2015). A default does not establish conclusory allegations, nor does it excuse any

6

defects in the plaintiffs' pleading. Moreover, allegations that are "contrary to uncontroverted material in the file of the case" cannot be deemed well-pleaded, and may therefore be disregarded. *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973); *see J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, 2014 WL 4700014, at *3 (E.D.N.Y. Aug. 29, 2014) (report and recommendation; citing cases), *adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014); *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989) ("On a motion for entry of a default judgment allegations of fact in a complaint . . . must lose their conclusive effect if demonstrated to be false by the proof offered by the plaintiff."). Thus, a defendant's default does no more than concede the complaint's well-pleaded factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *Finkel*, 577 F.3d at 84; *see also Greyhound Exhibitgroup*, 973 F.2d at 159.

    C.    <u>Substantive Federal and State Wage Law</u>

The FLSA applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's wage and overtime protections, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007), *aff'd*, 57 F.3d 93 (2d Cir. 2009).

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. *Id.* § 211(c). An employee bringing an action

for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *Reich v. S. New Eng. Telecomms.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations omitted). If an employer fails to keep the required records, the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Reich*, 121 F.3d at 66-67 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88). A plaintiff may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

The relevant provisions of the NYLL mirror the FLSA in most but not all respects. Similar to the FLSA, New York defines an employer as a "person … employing any" employee. NYLL § 190(3). New York likewise mandates a 150 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2. Unlike the FLSA, however, New York law does not require the plaintiff to show a nexus with interstate commerce or any minimum amount of annual sales. *Chun Jie Yin v. Kim*, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008). In addition, the state statute has a longer limitations period: claims under the FLSA must be brought within two years of a violation, unless the violation was willful, in which case the period is extended to three years; claims under NYLL may be asserted up to six years after the alleged violation. *See* 29 U.S.C. § 255(a); NYLL § 663(3).

D.   Liability

The plaintiffs assert two similar causes of action under the FLSA and NYLL for a failure to pay overtime wages. Complaint ¶¶ 71-87. Universal's default establishes as true the plaintiffs' allegations that they did not receive premium wages for their overtime hours. Whether Universal is legally responsible for paying such wages requires consideration of the applicability of the FLSA and

8

NYLL to their claims. As set forth below, I conclude that while the plaintiffs have established that Universal was an "enterprise" within the meaning of the FLSA, the record demonstrates that Mateo was not Universal's employee, and that as a result he has no viable claim.

1. Enterprise Coverage

A plaintiff can establish that an employer is subject to the FLSA's wage rules by demonstrating that it was "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *see Jacobs*, 483 F. Supp. 2d at 257-58.[2] That in turn requires a plaintiff to demonstrate that an employer has annual gross sales or revenues greater than $500,000 and regularly and recurrently has two or more employees either engaged in commerce or "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see* 29 C.F.R. § 779.238; *Archie v. Grand Cent. P'Ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998). The Complaint adequately alleges that Universal generates at least $500,000 in annual revenue and that its translators handled goods or materials originating outside of New York, including "translation equipment and software." Complaint ¶¶ 8, 26, 72-74; Tr. at 5, 10-11, 18. Those allegations suffice to establish that Universal is an enterprise within the meaning of the FLSA.

2. Universal Was Not Mateo's Employer

The state and federal laws the plaintiffs invoke use similar standards to determine whether a party qualifies as a plaintiff's "employer." *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003). I therefore rely on case law applying the FLSA to all of the Complaint's claims in considering whether Universal was an employer within the meaning of applicable law.

---

[2] Alternatively, a plaintiff can establish that he was personally "engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a)(1). The plaintiffs do not and cannot invoke that prong of the statute under the circumstances of this case.

9

Recognizing the FLSA's remedial purpose, courts in this jurisdiction have adopted an expansive view of the employment relationships the statute covers. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). "In determining whether an employment relationship exists for purposes of the FLSA, courts evaluate the 'economic reality' of the relationship, looking beyond rigid corporate constructs to consider the functional realities facing employees." *Lin v. Great Rose Fashion, Inc.*, 2009 WL 1544749, at * 12 (E.D.N.Y. June 3, 2009) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); *see Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case") (citations omitted).

A court assessing the economic reality of the nature of a relationship between a worker and an alleged employer should focus on the degree to which the latter exercised formal control over the former, taking into account such factors as "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 & n.1 (internal citations omitted). The court should also consider whether the plaintiff is in business for himself or instead depends on someone else's business for the opportunity to render service, taking into account the degree of control the alleged employer exercises over the worker, the worker's opportunity for profit or loss, the degree of skill and initiative the worker's position requires, the duration of the parties' relationship, and the extent to which the worker's business is integral to the company. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). No one factor is dispositive; the court should consider "any relevant evidence" and must not apply "a narrow legalistic definition." *Herman*, 172 F.3d at 139 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

10

The New York State Department of Labor has promulgated guidelines for assessing the nature of the employment relationship specifically for translators and interpreters. Consistent with the more general principles noted above, those guidelines emphasize the importance of the translator's investment in his own materials and expenses, his freedom to perform services for other companies and the degree to which the alleged employer provides supervision and oversight. *See* New York State Department of Labor, Unemployment Insurance Division, Guidelines for Determining Worker Status, Translating and Interpreting Industry 2-4 (2015), https://labor.ny.gov/formsdocs/ui/IA318.20.pdf.

Taking all of circumstances into account, I conclude that the record demonstrates that Mateo and Chavez, at a minimum, were independent contractors rather than Universal's employees – indeed, Chavez explicitly described himself as such, and Mateo knew that was how Universal viewed the relationship. Their testimony established, contrary to the Complaint's allegations, that they were responsible for providing their own computer equipment and headphones (and that the client agencies rather than Universal furnished the software they used); that they were not reimbursed for work-related expenses; that they typically did their work at the clients offices or in their own homes, and were not assigned office space at Universal's office; that they could and did sometimes refuse work assignments that Universal offered; and that they could and did work for other companies during the same period that they provided translation services to Universal's clients. Even taking into account uncontroverted allegations or testimony that support a different conclusion – including those concerning the plaintiffs' lack of stationery reflecting independent businesses, Universal's training and dress code requirements, the fact that Universal found replacement translators when necessary, and the fact that Universal's web site referred to translators as "employees" – I conclude that the economic reality of the relationship was that Mateo and Chavez were independent contractors.

11

Taken together, virtually all of the facts in the record support the conclusion that Universal was one of multiple companies that served to match translators with the government agencies that needed their services, and that part of the service it provided such agencies was the administrative ease of coordinating the schedules and compensation of multiple freelancers as well as a certain level of quality control maintained through centralized supervision of the freelancers' work. The sole fact that is both uncontroverted and inconsistent with that understanding is the fact that Universal described the translators it made available to clients as "employees" on its web site. While that fact is unquestionably crucial to the analysis, *see Brock*, 840 F.2d at 1059, it is not dispositive – and I conclude that it does not outweigh the contrary implication of all of the remaining established facts.

### 3.     Consequences of Mateo's Status as an Independent Contractor

Because I conclude that the record establishes that Universal was not Mateo's employer within the meaning of applicable law, I necessarily also conclude that Mateo has failed to establish Universal's liability for failure to pay required overtime wages under the FLSA and NYLL. I therefore respectfully recommend that the court deny his motion for default judgment and instead dismiss his claims with prejudice *sua sponte*.

That recommendation has consequences for the opt-in plaintiffs as well. Even if Mateo were entitled to a default judgment, the opt-in plaintiffs' right to similar relief in the absence of a complaint that names them as parties and pleads facts supporting their claims would be questionable. *See Charvac v. M&T Project Managers of New York*, 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013) (denying motion for default judgment for collective action where opt-ins are not named in the complaint because defendants must have an opportunity to respond to their claims) (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 133 (E.D.N.Y. 2011)). Instead, the better course would be to deny the motion for default judgment as to the opt-in plaintiffs without

prejudice, and to grant them leave to file an amended complaint setting forth their respective claims. *See id.*

Although such a result has some surface appeal, I recommend against it in the unusual circumstances of this case for the following reasons. In a case comparable to *Charvac*, the only concern is the procedural fairness of entering judgment on the claims of many plaintiffs against a defendant who may have had notice of the claims of only one – but there is nothing about the result that calls into question the finding that the plaintiffs are so similarly situated that a collective disposition is appropriate. The circumstances of this case turn that analysis on its head: Universal did not default until after it was on notice of the opt-in plaintiffs' claims, but the record now establishes that Mateo was not Universal's employee, as he claimed he was at the time the collective action was conditionally certified.

If all of the other opt-in plaintiffs were also independent contractors, none of them has a viable claim under the FLSA, and therefore none of them could be part of a collective action under that statute. If, on the other hand, any of the other opt-in plaintiffs could establish that they were Universal's employees, they would not be situated similarly to Mateo. Either way, there would no longer be any basis for maintaining the lawsuit that Mateo initiated as a collective action under the FLSA. I therefore respectfully recommend that the court deny the motion for default judgment as to the opt-in plaintiffs and *sua sponte* decertify the collective action.

The procedural result of the foregoing recommendations – dismissing the claims of the sole named plaintiff and decertifying the collective action – would be the termination of this lawsuit. The opt-in plaintiffs would remain free to initiate their own actions against Universal, but would face the prospect of a lesser recovery due to the applicable statutes of limitations that would restrict the damages period to the limitations period preceding the date of any such new filing, rather than to the comparable period preceding the filing of their respective consents to join this litigation. The

result is potentially a costly one for any opt-in plaintiff who could succeed in demonstrating that he or she was Universal's employee, and I do not lightly recommend it. Nevertheless, as explained above, I conclude that is the necessary procedural consequence of the finding that Mateo, the sole named plaintiff, was an independent contractor.[3]

III.     Recommendation

For the reasons set forth above (including, primarily, my conclusion that the record establishes that the named plaintiff was not Universal's employee within the meaning of applicable law), I respectfully recommend that the court deny the motion for a default judgment, decertify the collective action under the FLSA, and dismiss the action *sua sponte* with prejudice as to plaintiff Mateo and without prejudice as to the opt-in plaintiffs.[4]

---

[3] The risk of actual unfairness to the opt-in plaintiffs seems remote, as it is likely that Universal had a similar employment relationship with all of its translators. The only evidence in the record supporting the proposition that the opt-in plaintiffs were employees rather than independent contractors is the collection of boilerplate declarations their counsel submitted, which track the Complaint's allegations about the nature of the relationship between Universal and the translators who served its clients. However, the assertions in those papers – which included declarations attributed to Mateo and Chavez, among others – were at odds with the wholly credible live testimony of both Mateo and Chavez. *Compare* Complaint ¶ 36 ("[Universal] provided [plaintiffs] … with all of the equipment and software they needed to perform their translation services."), DE 59 (Mateo Declaration) ¶ 4 ("Universal would provide me with the equipment or software I would need to perform my duties as a translator."), *and* DE 56 (Chavez Declaration) ¶ 12 ("I had no time to work for another company."), *with* Tr. at 5 (Mateo's testimony: "The government provides the computers unless you're doing a project from home, then you need your own computer; headphones you get yourself."), *and* Tr. at 16 (Chavez's testimony: "When I was with Universal I did work with another company[.]"). The circumstances thus suggest that the other opt-in plaintiffs' truthful testimony would likewise demonstrate that that they too were independent contractors who would have no viable claims for overtime wages. That possibility seems more plausible than the proposition that Universal had an entirely different relationship with the only two plaintiffs who happened to testify at the inquest, and that those two plaintiffs inexplicably submitted incorrect declarations that contradicted their own testimony while coincidentally being strikingly similar to the other plaintiffs' correct declarations.

[4] In the event the court rejects the instant recommendation and determines that any plaintiff is entitled to a finding of liability, I will of course supplement this report and recommendation with an analysis of the appropriate relief that should be awarded.

IV.     Objections

Any objections to this Report and Recommendation must be filed no later than September 21, 2015. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        September 4, 2015

                                        /s/
                                    JAMES ORENSTEIN
                                    U.S. Magistrate Judge